Exhibit A

# NOTE

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

November 21, 1997                    Independence                    Ohio
[Date]                                    [City]                                    [State]

2070 BROWN RD., LAKEWOOD, OH 44107
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $        98,550.00        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

ASSURED MORTGAGE CORPORATION

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of        5.950        %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the    FIRST    day of each month beginning on    January 1st    , 1998    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    December 1, 2027    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at        5000 ROCKSIDE ROAD, INDEPENDENCE, OH 44131

or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $        587.70        .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    Fifteen    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        4.000        % of my overdue payment. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

Form 3200 12/83
Amended 4/92
-5V (9204)
VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291
Page 1 of 2                    Initials:



### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered-or-mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 10. ALLONGE TO THIS NOTE

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge      ☐ Other [Specify]      ☐ Other [Specify]

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Regulations (38 C.F.R. Part 36) issued under the Department of Veteran's Affairs ("V.A.") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  
DEAN M. BOLAND  -Borrower  
SSN:

_____ (Seal)  
LISA A. BOLAND  -Borrower  
SSN:

_____ (Seal)  
-Borrower  
SSN:

_____ (Seal)  
-Borrower  
SSN:

*[Sign Original Only]*

November 24, 1997
date

Pay to the order of ___THE LEADER MORTGAGE COMPANY___

_____

_____

without recourse
ASSURED MORTGAGE CORPORATION

By: _Rosanne Udivich_ ————Rosanne Udivich, Closing Co-Ordinator

By: _Shelley Sawyer_ ————Shelley Sawyer, Closing Co-Ordinator

Cleveland, Ohio _____ 19_____

Pay to the order of _____

_____ without recourse

THE LEADER MORTGAGE COMPANY

By_____
Elaine M. Wojtowicz, Vice President

MTG
46

**622911**

RECORDED THIS DATE
PATRICK J. O'MALLEY
CUYAHOGA CITY RECORDER

97 NOV 24 PH 12: 16

Exhibit B



VOL. 97-12114 PAGE 52

————————— [Space Above This Line For Recording Data] —————————

# OPEN-END MORTGAGE

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS MORTGAGE ("Security Instrument") is given on    November 21 , 1997          . The mortgagor is

DEAN M. BOLAND and LISA A. BOLAND, Husband and Wife

whose current mailing address is  2070 BROWN RD., LAKEWOOD, OH  44107

("Borrower"). This Security Instrument is given to

ASSURED MORTGAGE CORPORATION

which is organized and existing under the laws of    THE STATE OF OHIO                      , and whose
address is   5000 ROCKSIDE ROAD, INDEPENDENCE, OH 44131
("Lender"). Borrower owes Lender the principal sum of
Ninety Eight Thousand Five Hundred Fifty and no/100--------

Dollars (U.S. $    98,550.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   December 1, 2027          .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in                      CUYAHOGA                            County, Ohio:
Situated in the City of Lakewood, County of Cuyahoga and State of Ohio: And known as being Sublot No. 18 in the S.H. Kleinman Realty Company's Madison Terrace Subdivision of part of Original Rockport Township Section No. 19, as shown by the recorded plat in Volume 68 of Maps, Page 33 of Cuyahoga County Records, and being 40 feet front on the Westerly side of Brown Road and extending back of equal width 115 feet, as appears by said plat, be the same more or less, but subject to all legal highways.

which has the address of                        2070 BROWN RD., LAKEWOOD                          [Street, City],
Ohio            44107                  [Zip Code] ("Property Address");

OHIO-Single Family-FNMA/FHLMC UNIFORM
                      INSTRUMENT Form 3036 9/90
VMP -6V(OH) (9403).01    OHVT1V   Amended 3/94
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6                         Initials: _____

Commonwealth Land Title
Insurance Company

97-3843

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Form 3036 9/90
Initials

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

·payments may no longer be required, at the option of Lender, if mortgage insur ___ ,·····d
that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay
the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage
insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

· **9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give
Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any
condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and
shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument,
whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair
market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this
Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by
this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total
amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately
before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair
market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the
taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall
be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an
award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given,
Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums
secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or
postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification
of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall
not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to
commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization
of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's
successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the
exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this
Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of
paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security
Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that
Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums
secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or
make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges,
and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the
loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge
to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to
Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct
payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any
prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing
it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address
or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to
Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this
Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the
jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note
conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be
given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared
to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Form 303 9/9
Initials:

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, costs of title evidence.**

 -6V(OH) (9403).01

Page 6 of 6

Form 3038 9/90
Initials

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

VOL. 97-12114 PAGE 57

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ V.A. Rider | ☒ Other(s) [specify] OHFA Addendum | |
| | VA Tax Exempt Addendum | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____ (Seal)
DEAN M. BOLAND                    -Borrower

Corinne Lukow

_____ (Seal)
LISA A. BOLAND                    -Borrower

Valerie M. Belter

_____ (Seal)          _____ (Seal)
                              -Borrower                                        -Borrower

**STATE OF OHIO,**   Cuyahoga                                   **County ss:**

On this   21st   day of   November   ,   1997   , before me, a Notary Public in and for said County and State, personally appeared   DEAN M. BOLAND and LISA A. BOLAND

, the individual(s) who executed the foregoing instrument and acknowledged that
THEY   did examine and read the same and did sign the foregoing instrument, and that the same is   THEIR   free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires:

_____
Notary Public, STATE OF OHIO, CUY.CTY
MY COMM ISSION EXPIRES JULY 31, 2002

(Seal)                    This instrument Prepared by: ASSURED MORTGAGE CORPORATION

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this 21st day of November , 1997 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to

ASSURED MORTGAGE CORPORATION

(herein "Lender")

and covering the Property described in the Security Instrument and located at

2070 BROWN RD. LAKEWOOD, OH 44107
(Property Address)

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 17 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall

**VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER**



be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

_Dean M. Boland_

DEAN M. BOLAND             -Borrower

LISA A. BOLAND             -Borrower

                       -Borrower

                       -Borrower

THIS INSTRUMENT PREPARED BY:
ASSURED MORTGAGE CORPORATION



## VA ADDENDUM

As long as this mortgage is held by Bank One Trust Company, N.A., as Trustee; pursuant to that certain Trust Indenture, dated as of November 21, 1997 , with the Housing Finance Authority of Cuyahoga County, Ohio, the Mortgagee, ASSURED MORTGAGE CORPORATION , or such of its successors or assigns as may be separate instrument assume responsibility for assuming compliance by the Mortgagor with the provisions of this Addendum, may declare all sums secured by this mortgage to be immediately due and payable if the loan is not paid in full and:

(a) all or part of the property is sold or otherwise transferred (other than by devise, descent or operation of law) by Mortgagor to a purchaser or other transferee:

(i) who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Sections 143 (c) and (i) (2) the Internal Revenue Code; or

(ii) who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Sections 143 (d) and (i) (2) of the Internal Revenue Code; or

(iii) at an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for Targeted Area residences), all as provided in Sections 143 (e) and (i) (2) of the Internal Revenue Code; or

(iv) whose family income exceeds 115% (100% for families of fewer than three members of applicable median family income [140% (120% for families of fewer than three members) for a family in a Targeted Area residence], all as provided in Sections 143 (f) and (i) (2) of the Internal Revenue Code; or

(b) Mortgagor fails to occupy the property described in mortgage without prior written consent of the Mortgagee or its successors or assigns described at the beginning of this Addendum; or

(c) Mortgagor omits or misrepresents a fact that is material with respect to the provisions of Section 143 of the Internal Revenue Code, as amended, in an application for this mortgage.

References are to the 1986 Internal Revenue Code in effect on the date of execution of the mortgage and are deemed to include implementing regulations.

DATE: November 21, 1997

SIGNATURE OF MORTGAGOR _Dean M. Boland_
DEAN M. BOLAND
SIGNATURE OF MORTGAGOR _Lisa A. Boland_
LISA A. BOLAND

THIS INSTRUMENT PREPARED BY:
ASSURED MORTGAGE CORPORATION

# OHIO HOUSING FINANCE AGENCY
## SINGLE FAMILY MORTGAGE REVENUE BOND PROGRAM

### ADDENDUM TO MORTGAGE

As long as this mortgage is held as security for the Ohio Housing Finance Agency, the Lender ("Mortgagee") may declare all sums secured by this mortgage to be immediately due and payable if:

(a) All or part of the property is sold or otherwise transferred (other than by devise, descent or operation of law) by Borrower ("Mortgagor") to a purchaser or other transferee:

i) who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143(a)(3) of the Internal Revenue Code; or

ii) who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Section 143(d)(1) of the Internal Revenue Service Code; or

iii) at an acquision cost which is greater than the then current federally designated average area purchase price for existing housing, all as provided in Section 143(e) of the Internal Revenue Code or in any subsequent amendments thereto; or

iv) who has an income in excess of the then current income limits, all as provided in Section 143(f) of the Internal Revenue Code or in any subsequent amendments thereto; or

(b) Borrower ("Mortgagor") omits or misrepresents a material fact in an application for this mortgage.

(c) The Borrower ("Mortgagor") subsequently leases the property (except upon prior written approval of the Ohio Housing Finance Agency in extreme hardship circumstances).

IN WITNESS WHEREOF, the Borrower ("Mortgagor") has executed this Addendum on this 21 day of _November_ 199 7 .

Signature _Dean M. Boland_          Signature _Lisa C. Boland_

Printed ___DEAN M. BOLAND___          Printed ___LISA A. BOLAND___

STATE OF OHIO )
 )
COUNTY OF _CUYAHOGA_ )

On this 21 day of _November_ 199 7 , before me, a Notary Public within and for said County and State, personally appeared Dean M. Boladn and Lisa A. Boland, Husband and Wife to me known to be the person(s) described in and who, being by me first duly sworn, executed the foregoing Addendum to Mortgage, and acknowledged, deposed and said that he/she/they executed the same as his/her/their free act and deed and stated that the information and certifications contained therein are true and correct.

_Corinne Lukow_
Notary Public

(SEAL)

**CORINNE LUKOW**
Notary Public, State of Ohio, Cuy. Cty.
My Commission Expires July 31, 2002

My Commission Expires: _____

This instrument was prepared by: ASSURED MORTGAGE CORPORATION
Address: 5000 ROCKSIDE ROAD, INDEPENDENCE, OH 44131

ASS.gn
14—
622912

Exhibit C

③

MORTGAGOR(S) : DEAN M. BOLAND AND LISA A BOLAND, Husband and Wife

AMOUNT SECURED : $98,550.00
MORTGAGE DATED : November 21, 1997
MORTGAGE RECORDED : November 24, 1997      VOL. 97-12115   PAGE   2
MORTGAGE NUMBER : 6229 // 98
PROPERTY ADDRESS : 2070 Brown Rd., Lakewood, OH 44107

LEGAL DESCRIPTION : Situated in the City of Lakewood, County of Cuyahoga and State of
Ohio: And known as being Sublot No. 18 in the S.H. Kleinman
Realty Company's Madison Terrace Subdivision of part of
Original Rockport Township Section No. 19, as shown by the
recorded plat in Volume 68 of Maps, Page 33 of Cuyahoga County
Records, and being 40 feet front on the Westerly side of Brown
Road and extending back of equal width 115 feet, as appears by said
plat, be the same more or less, but subject to all legal highways.

NOV 24   PM12: 16

RECORDED THIS DATE
PATRICK J. O'MALLEY
CUYAHOGA CO. RECORDER

For value received, the undersigned hereby assigns, transfers, and sets over unto:

The Leader Mortgage Company
1015 Euclid Avenue
Cleveland, OH 44115

All its right, Title and Interest in and to the above referenced mortgage and the note secured
thereby.

Dated at Independence, Ohio, this ___21st___ day ___November___.
19 97 .
In the presence of:                      ASSURED MORTGAGE CORPORATION

_Lois Ceglia_                            _Elizabeth Powers_
Lois Ceglia                              Elizabeth Powers, Closing Co-Ordinator

_Rosanne Udivich_                        _Corinne Lukow_
Rosanne Udivich                          Corinne Lukow, Vice President Escrow

STATE OF OHIO          )
COUNTY OF CUYAHOGA  )ss

Before me, a notary public, in and for said county and state, personally appeared Elizabeth
Powers, Closing Co-Ordinator, and Corinne Lukow, Vice President Escrow, who acknowledge
that they did execute the foregoing instrument for and on behalf of said corporation and that the
same constitutes the free act and deed of said corporation and their free voluntary act and deed
individually and as such officers for the users and purposes therein mentioned.

In witness whereof, I have hereunto set my hand and affixed my seal at Independence, Ohio,
This___21st___ day of ___November___, 19 97 .

_Susan Krainovich_
Susan Krainovich, Notary Public
State of Ohio, Cuyahoga County
My Commission Expires 09/14/99

This Instrument Prepared By:
Assured Mortgage Corporation
5000 Rockside Road #450
Independence, Ohio 44131

Commonwealth Land Title
Insurance Company     97-3543

**usbank.** Exhibit D

### U.S. BANK NATIONAL ASSOCIATION
### ASSISTANT SECRETARY'S CERTIFICATE

I, Juliana B. Panetta, Assistant Secretary of U.S. Bank National Association, a national banking association organized under the laws of the United States of America, do hereby certify as follows:

1. that I am a duly qualified and acting Assistant Secretary of U.S. Bank National Association; and

2. that The Leader Mortgage Company, LLC, Cleveland, Ohio merged with and into U.S. Bank National Association, Cincinnati, Ohio (OCC charter number 24) under the title U.S. Bank National Association (OCC charter number 24) effective June 1, 2004;

3. that attached as Exhibit A is a true and correct copy of the official certification letter issued by the Office of the Comptroller of the Currency evidencing the merger listed above in number 2;

4. that U.S. Bank National Association does not have a corporate seal; and

5. that the information contained in this Affidavit is true to the best of my own knowledge.

IN WITNESS WHEREOF, I have hereunto signed my name effective as of this 21st day of July, 2014.

_Juliana B J Panetta_

Juliana B. Panetta, Assistant Secretary



Central District Office
One Financial Place, Suite 2700
440 South LaSalle Street
Chicago, Illinois 60605

June 1, 2004

Ms. Karen J. Canon
Senior Corporate Counsel
U.S. Bank National Association
U.S. Bancorp Center - BC-MH-H21N
800 Nicollet Mall
Minneapolis, Minnesota 55402

Re:    **Application for the Merger of The Leader Mortgage Company, LLC, Cleveland, Ohio and First
National Cincinnati Corporation, Cincinnati, Ohio with U.S. Bank National Association, Cincinnati,
Ohio -- OCC Application Number 04-CE-12-080**

Dear Ms. Canon:

This letter is the official certification of the Comptroller of the Currency (OCC) to merge The
Leader Mortgage Company, LLC, Cleveland, Ohio and First National Cincinnati Corporation,
Cincinnati, Ohio with and into U.S. Bank National Association, Cincinnati, Ohio. It is
understood that the merger will be effective on June 1, 2004. The resulting bank's title and
charter number will be U.S. Bank National Association with Charter Number 24.

If you have questions, please contact the undersigned at (312) 360-8863.

Sincerely,

David J. Rogers
Licensing Manager
National Bank Examiner